UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JOHN REILLY, PATRICK DEROSA, SEAN
O'BRIEN, ADOLFO REDILLO and ALOKO KHAN,
on behalf of themselves, individually, and on behalf of
all others similarly situated,

                              Plaintiffs,

          -against-

THE CITY OF NEW YORK and THE NEW YORK
CITY POLICE DEPARTMENT'S BUILDING
MAINTENANCE SECTION,

                            Defendants.
------------------------------------------------------------------X

Dkt. No.:  23-cv-521

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

**Collective Action Complaint**

Plaintiffs JOHN REILLY, PATRICK DEROSA, SEAN O'BRIEN, ADOLFO REDILLO,

and ALOKO KHAN (collectively "Plaintiffs"), by and through their attorneys, JOSEPH &

NORINSBERG, LLC, as and for their complaint against THE CITY OF NEW YORK and THE

NEW YORK CITY POLICE DEPARTMENT'S BUILDING MAINTENANCE SECTION

(collectively "Defendants"), allege upon personal knowledge as to themselves and upon

information belief as to all other matters, as follows:

## NATURE OF THE CASE

1.      Plaintiffs bring this action on behalf of themselves and all other similarly situated

trade employees for damages and equitable relief based on Defendants' systemic and continuous

violations of the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201

*et seq*. and any other cause(s) of action that can be inferred from the facts set forth herein.  The

FLSA mandates that employers pay employees who work overtime – that is, over forty (40) hours

in a workweek – at least "one and one-half times" their "regular rate" of pay, yet Defendants failed

to do so.

## PRELIMINARY STATEMENT

2.      Defendant BMS provides maintenance related services in **over two hundred (200) facilities occupied by the NYPD** including 77 precincts, 12 transit districts, 9 housing police service areas, and administrative, training and storage facilities.[1]

3.      Upon information and belief, BMS employs approximately one hundred (100) trade employees including Plaintiffs, to work as, *inter alia*: carpenters, plumbers, electricians, painters, laborers and metal, mason and maintenance workers.

4.      BMS assigned Plaintiffs work vehicles which were essential to servicing numerous NYPD facilities located throughout the City of New York.  BMS maintained its work vehicles in various designated NYPD storage facilities.

5.      As discussed below, Defendants regularly required Plaintiffs to work overtime in addition to their scheduled shifts per week.  However, Defendants failed to pay Plaintiffs for all their work time, including but not limited to time spent retrieving, storing, and driving work vehicles between NYPD storage facilities and worksites before the start and after the end of their scheduled shifts.

6.      Defendants also engaged in an unlawful time-shaving scheme wherein they automatically deducted meal break time from each of the Plaintiffs' daily and weekly hours — despite Plaintiffs actually working through one to two meal break periods per week to complete assignments.

7.      The pre-shift, post-shift and meal period work caused Plaintiffs to frequently work in excess of forty (40) hours per week without any overtime compensation.  On average, Plaintiffs

---

[1] See Fiscal 2020 Preliminary Plan and Fiscal 2019 Preliminary Mayor's Management Report for the New York City Police Department, available at: https://comptroller.nyc.gov/reports/annual-claims-report/, last visited on October 26, 2022.

were not compensated for between approximately two (2) and ten-and-a-half (10.5) hours of additional overtime work beyond their scheduled shifts per week.

8.      Specifically, Plaintiffs who were scheduled to work thirty-five (35) hours per week were not compensated for between two (2) and five-and-a-half (5.5) hours of overtime each week. Plaintiffs who were scheduled to work forty (40) hours per week were not compensated for between seven (7) and ten-and-a-half (10.5) hours of overtime each week.

9.      To avoid detection, Defendants systemically shaved hours each week from Plaintiffs' time records.  BMS also directed Plaintiffs to submit false time entries which were inconsistent with the actual overtime hours they worked.  Additionally, BMS directed Plaintiffs not to punch in or out from NYPD storage facilities to avoid documenting the overtime hours they worked.

10.     Plaintiffs bring this action on behalf of themselves, individually, and all other similarly situated current and former BMS trade employees, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*., and specifically the collective action provision of the FLSA, 29 U.S.C. § 216(b), to remedy violations of the wage and hour provisions of the FLSA by Defendants that have deprived Plaintiffs and others similarly situated of their lawfully earned overtime wages.

## JURISDICTION AND VENUE

11.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201 *et seq.*

12.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(1) and/or (b)(2), as one or more of the Defendants reside within this judicial district, and as a substantial part of the

events or omissions giving rise to the claims for relief occurred in this judicial district where the Defendants, a Public Agency, has its principal place of business and facilities.

## PARTIES

### *Plaintiffs*

13.     Plaintiffs John Reilly ("Mr. Reilly"), Patrick DeRosa ("Mr. DeRosa"), Sean O'Brien ("Mr. O'Brien"), Adolfo Redillo ("Mr. Redillo"), and Aloko Khan ("Mr. Khan") are individuals who at all times relevant herein, were and continue to be "employees" of Defendants within the meaning of the FLSA, 29 U.S.C. § 203 (e)(1) and entitled to protections as defined in the FLSA.

14.     All Plaintiffs have submitted written consent to be Party-Plaintiffs in this action pursuant to 29 U.S.C. § 216(b).  (See Exhibit A FLSA Consent Forms).

### *Defendants*

15.     Defendant The City of New York ("NYC") was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

16.     Defendant The New York City Police Department's Building Maintenance Section ("BMS") provides maintenance services at facilities occupied by the New York City Police Department.

17.     Defendant NYC is an entity amenable to suit under the FLSA in that it is, and was at all times material hereto, a Public Agency and "employer" within the meaning of 29 U.S.C. § 203 (s) (l) (C).  Defendant NYC may be served with process by serving the Office of Corporation Counsel, 100 Church Street, New York, N.Y. 10007.

18.     Defendant BMS is an administrative division of Defendant NYC, specifically the NYPD, and an entity amenable to suit under the FLSA in that it is, and was at all times material hereto, a public agency within the meaning of 29 U.S.C. § 203 (s) (l) (C).  The NYPD's principal office is located at One Police Plaza, New York, N.Y. 10038.

19.     At all relevant times herein, Defendants exercised control over the terms and conditions of Plaintiffs' employment, in that Defendants had and exercised the power to: (i) hire and fire Plaintiffs; (ii) determine their rates and methods of pay; (iii) determine work schedules; (iv) supervise work and control of the employees, including the Plaintiffs herein; and (v) otherwise affect the quality of the employees' work conditions and employment.

20.      Accordingly, Defendants were and are the "employer(s)" of Plaintiffs within the meaning of the FLSA, 29 U.S.C. § 203(d).

## COLLECTIVE ACTION ALLEGATIONS

21.     Plaintiffs Mr. Reilly, Mr. DeRosa, Mr. O'Brien, Mr. Redillo and Mr. Khan seek to bring this suit to recover unpaid overtime compensation and liquidated damages from Defendants pursuant to the applicable provisions of the FLSA, 29 U.S.C. § 216(b), on behalf of themselves and on behalf of the following Putative Collective action members:

> Current and former hourly trade workers including, but not limited to, carpenters, plumbers, electricians, painters, laborers and metal, mason and maintenance workers and/or  employees with a different title but who performed the same or similar duties as trade workers, who during the applicable FLSA limitations period, performed any work for any of the Defendants,  and who consent to file a claim to recover damages for: (1) overtime compensation that is legally due to them; and/or (2) liquidated damages that are legally due to them ("FLSA Plaintiffs").

5

22.     Defendants treated Plaintiffs and all FLSA Plaintiffs similarly in that Plaintiffs and all FLSA Plaintiffs: (1) were assigned work vehicles to readily service numerous NYPD facilities located throughout NYC, as described in the "Individual Allegations" section below; (2) were required to work in excess of forty (40) hours in a workweek; and (3) were not paid the required one and one-half times their respective regular rates of pay for all hours worked per workweek in excess of forty (40).

23.     At all relevant times, Defendants are and have been aware of the requirements to pay Plaintiffs and all FLSA Plaintiffs at an amount equal to the rate of one and one-half times their respective regular rates of pay for all hours worked each workweek above forty (40), yet they purposefully and willfully chose and choose not to do so.

24.     There are numerous similarly situated current and former employees of Defendants who have been similarly underpaid in violation of the FLSA, and who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join.

25.     The persons in the FLSA Collective Action identified above, including both current and former trade employees over the relevant period, is unknown, and facts on which the calculation of that number can be based are presently within the sole control of Defendants.  Upon information and belief there are at least one hundred (100) FLSA members, and there could be significantly more.

26.     The precise number of FLSA collective action members should be readily available from a review of the Defendants' personnel, scheduling, time and payroll records, and from input received from the collective action as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b).

27.     Thus, all FLSA Plaintiffs are victims of Defendants' pervasive practice of willfully refusing to pay their employees overtime compensation for all hours worked per workweek above forty, in violation of the FLSA.

## ALLEGATIONS COMMON TO ALL PLAINTIFFS

28.     BMS provides maintenance related services to **over two hundred (200) facilities occupied by the NYPD.**

29.     BMS employed Plaintiffs as plumbers, electricians, laborers, and maintenance workers and assigned them work vehicles to service NYPD facilities.

30.     Plaintiffs frequently worked overtime in addition to their scheduled shift per week performing required job duties with the work vehicle for which they were not compensated. Specifically, they routinely work additional hours before the start time of their scheduled shifts, after the end of their scheduled shifts, and during their unpaid meal breaks, all without compensation.

31.     The pre-shift, post-shift and meal period work caused Plaintiffs to frequently work in excess forty (40) hours per week without any compensation.  On average, Plaintiffs were not compensated for approximately two (2) to ten-and-a-half (10.5) hours of overtime they worked each week.

*Work Vehicle Assignment and Rules*

32.     BMS assigned Plaintiffs vans and/or box utility vehicles equipped with tools and materials.

33.     The work vehicles allow Plaintiffs to readily service NYPD facilities which is essential to BMS's ability to maintain and efficiently service over 200 NYPD facilities.

34.     BMS maintains its work vehicles at various designated NYPD storage/parking locations.

35.     BMS requires Plaintiffs to report to NYPD storage facilities at the start of their workday to pick up their work vehicles.

36.     After obtaining their work vehicle from its given NYPD storage facility, Plaintiffs are required to drive their work vehicle to arrive at their first assigned NYPD worksite by 7:00 a.m.

37.     Plaintiffs exclusively use the work vehicles to travel between NYPD facilities after commencing their workdays.  BMS monitored Plaintiffs' exclusive use by requiring them to submit Daily BMS Assignment Sheets ("BMS Daily Sheets"), which recorded travel locations, times, and mileage.

***BMS Failed to Pay Plaintiffs Wages for the Overtime Hours they Worked Before the Start of their Scheduled Shifts***

38.     Plaintiffs are scheduled to work either a thirty-five (35) or forty (40) hour schedule each week, Monday to Friday, from 7:00 a.m. to either 2:30 p.m. or 3:30 p.m.

39.     BMS requires Plaintiffs to report to their assigned NYPD worksites after having already obtained their BMS-issued work vehicle by 7:00 a.m.

40.     To adhere to this directive, Plaintiffs are required to commence their workday between one (1) and one-and-one-half (1.5) hours before their 7:00 a.m. scheduled start time.

41.     First, Plaintiffs are required to report to various NYPD storage facilities and regularly arrive at these facilities between 5:30 a.m. and 6:00 a.m.

42.     Second, Plaintiffs are required to perform an inspection of the work vehicle at their given NYPD storage facilities.  Plaintiffs begin their inspection by checking for any damage to the vehicle or to the equipment.  If any damage is found, Plaintiffs are required to immediately report

it to their shop supervisor.  Plaintiffs also inspect the operability of the vehicle by checking the tire pressure, radiator, battery, oil, gasoline, and fluid levels.  On average, the inspection takes approximately fifteen (15) minutes.

43.     Third, Plaintiffs also spend an additional five (5) minutes at NYPD storage facilities filling out BMS Daily Sheets, recording the work vehicle's storage location, NYPD worksite locations, travel times, and mileage.

44.     Fourth, Plaintiffs drive their work vehicle to their first NYPD assigned worksite and regularly spend between forty-five (45) minutes to one (1) hour traveling.

45.     The foregoing activities Plaintiffs performed before the start of their scheduled shifts were done at the direction of BMS and for the sole benefit of BMS, and thus compensable under the FLSA.

46.     Defendants used multiple timekeeping systems to track the number of hours worked by Plaintiffs.  First, Plaintiffs were required to punch in and out through an electronic timekeeping system, "CityTime."  Second, Plaintiffs were required to scan their assigned ID badges in and out at scanners located in their assigned NYPD worksites.  Third, Plaintiffs were required to make manual time entries in their BMS Daily Sheets.

*47.*     Despite utilizing these timekeeping measures which revealed that Plaintiffs were in fact performing pre-shift work without pay, BMS invariably failed to provide Plaintiffs any compensation for the work they required Plaintiffs to perform before 7:00 a.m.

***BMS Failed to Pay Plaintiffs Wages for All the Overtime Hours they Worked After the End of their Scheduled Shifts***

48.     At the end of their workday, BMS claimed to allow Plaintiffs to depart the worksite forty-five (45) minutes before the end of their scheduled shifts to return their work vehicles to the NYPD drop-off location / storage facilities.

49.     However, at the same time, BMS threatened to discipline employees who left the worksite before the end of their scheduled shifts.  Plaintiffs received multiple warnings from BMS's management about unfinished work due to leaving worksites before the end of their scheduled shifts, notwithstanding Plaintiffs' need to return their vehicles to NYPD storage facilities before ending their workday.

50.     Plaintiffs were also informed that BMS's Integrity Control Officer Lieutenant James G. Downey ("Lt. Downey") planned to personally meet with employees who had unfinished work orders "and things are not going to be good."

51.     As an intended effect of BMS's threats, Plaintiffs were hesitant to leave their assigned worksites before the end of their scheduled shifts, and two (2) to three (3) times per week worked at worksites until the end of their shifts to complete their work *before* driving back to NYPD storage facilities to return their vehicles.

52.     Consequentially, during these days, Plaintiffs often returned their work vehicle to their assigned NYPD storage facilities a minimum of approximately thirty (30) minutes past the end of their shift.

53.     Additionally, even when Plaintiffs utilized the forty-five (45) minute grace period described above, they were still often unable to drop off their work vehicles by the end of their shifts due to various delays, such as routine traffic.  Consequently, in addition to the two (2) to three (3) days described above, at least one additional day per week, Plaintiffs returned their work vehicle to NYPD storage facilities approximately thirty (30) minutes past the end of their shifts.

54.     Despite working these additional overtime hours virtually every week, BMS did not pay Plaintiffs any wages for their overtime hours, with one lone exception.

55.     That is, BMS Lt. Downey informed Plaintiffs that if they were ever involved in a car accident during what BMS knew to be their unpaid working hours, Plaintiffs and other similarly situated *would* be paid overtime to avoid any discrepancies concerning the vehicle's insurance coverage and/or Plaintiffs' worker's compensation coverage.

56.     Accordingly, BMS willfully violated the FLSA and acted in bad faith.  Defendants had no reasonable ground for believing that their failure to pay Plaintiffs overtime was consistent with the FLSA.  Indeed, Defendants' directive that Plaintiffs *would only be paid overtime to avoid insurance fraud* demonstrates how Defendants knowingly violated the FLSA yet chose to do so just the same.

### BMS Failed to Pay Plaintiffs with Wages for Overtime Hours they Worked During their Unpaid Meal Periods

57.     In addition to their pre- and post-shift work, Defendants also engaged in an unlawful time-shaving scheme wherein they automatically deducted meal break time from each of the Plaintiffs' daily and weekly hours —despite Plaintiffs working through meal break periods to complete their assignments.

58.     Defendants have failed to compensate Plaintiffs for the work they were directed to perform during an average of between one and two unpaid meal periods each week.

59.     The pre-shift, post-shift and meal period work caused Plaintiffs to frequently work in excess forty (40) hours per week without any compensation

60.     On average, Plaintiffs who were scheduled to work thirty-five (35) hours per week were not compensated for two (2) to five-and-a-half (5.5) hours of overtime.  Plaintiffs who were scheduled to work forty (40) hours per week were not compensated for seven (7) to ten-and-a-half (10.5) hours of overtime.

61.     To avoid detection, Defendants systemically shaved hours each week from Plaintiffs' time records.  BMS also directed Plaintiffs to submit false time entries which were inconsistent with the actual overtime hours they worked.  Additionally, BMS directed Plaintiffs not to punch in or out from NYPD storage facilities to avoid documenting the overtime hours they worked.

## INDIVIDUAL ALLEGATIONS

### John Reilly

62.     Plaintiff Mr. Reilly is a member of Plumbers Local Union No. 1, U.A., and has been employed by Defendants as a Plumber since in or about March of 2014.

63.     Throughout his employment, Mr. Reilly has been assigned a work vehicle maintained by Defendants in the following NYPD storage facilities: (i) NYPD Highway Patrol Unit 3 located at 198-15 Grand Central Pkwy, Hollis, N.Y. 11423; and (ii) NYPD 105th Precinct located at 92-08 222nd St, Queens, N.Y. 11428.

64.     Mr. Reilly is scheduled to work thirty-five (35) hours per week, seven (7) hours per day with a thirty (30) minute unpaid meal break, Monday to Friday, from 7:00 a.m. to 2:30 p.m.

65.     However, Defendants required Mr. Reilly to work beyond his scheduled shift virtually each week and therefore consistently works and has worked in excess of forty (40) hours. Specifically, Mr. Reilly regularly worked eight-and-a-half (8.5) to nine (9) hours per day, five (5) to six (6) days per week, working an average of between forty-two-and-a-half (42.5) and fifty-four (54) hours per week.

66.     Despite working overtime each week, Defendants failed to compensate Mr. Reilly for all of his work time, including, but not limited to, time spent performing tasks enumerated in Paragraphs 32-37 before the start of his scheduled shift, after the end of his scheduled shift, and

during his unpaid thirty (30) minute meal period.  On average, Mr. Reilly was not compensated

for between two (2) to five-and-a-half (5.5) hours of overtime he worked each week.

      67.    By way of example only, during the week May 23, 2021 through May 29, 2021,

Mr. Reilly worked fifty-one hours and fifteen minutes (51.25) according to the following schedule,

yet Defendants only paid him for forty-four-and-a-half (44.5) hours of work this week:

| | |
|---|---|
| Sunday, May 23, 2021: | off. |
| Monday, May 24, 2021: | from 6:06 a.m. until approximately 3:15 p.m. (Denied meal break). |
| Tuesday, May 25, 2021: | from 5:52 a.m. until approximately 3:00 p.m. |
| Wednesday, May 26, 2021: | from 6:00 a.m. until approximately 3:00 p.m. |
| Thursday, May 27, 2021: | from 6:08 a.m. until 2:30 p.m. |
| Friday, May 28, 2021: | from 5:54 a.m. until 2:30 p.m. |
| Saturday, May 29, 2021: | 8:30 a.m. until 6:00 p.m. (Denied meal break). |

      68.    Defendants failed to compensate Mr. Reilly for all his time spent retrieving his

work vehicle from NYPD storage facilities and driving to worksites before the start of his

scheduled shifts.  For the week above, Mr. Reilly was paid nothing for the work he performed

before 7:00 a.m.

      69.    Defendants captured the pre-shift hours Mr. Reilly worked in their electronic

timekeeping system.   Specifically, the CityTime timesheet for the week above shows that Mr.

Reilly worked and was not compensated for five (5) pre-shift hours.  Indeed, this timekeeping

mechanism is entirely self-serving as Defendants' payroll records continuously underreported the

number of hours actively worked by Mr. Reilly.

70.     Defendants also failed to compensate Mr. Reilly for all his time spent driving his assigned work vehicle from NYPD worksites to storage facilities and returning the vehicle after the end of his scheduled shifts.  For the week above, Mr. Reilly worked past 2:30 p.m. on three weekdays resulting in an additional one hour and forty-five minutes (1.75) hours of unpaid overtime.

71.     In addition, as described above, twice during the above example week, Defendants required Mr. Reilly to work through his meal period to complete assignments.  For the week above, Mr. Reilly was denied uninterrupted meal breaks on two days resulting in an additional one (1) hour of unpaid overtime.

72.     Accordingly, Defendants failed to pay Plaintiff Mr. Reilly any compensation, let alone one-and-one-half times his regular rate of pay, for six hours and forty-five minutes (6.75) of overtime this week.

### Patrick DeRosa

73.     Plaintiff Mr. DeRosa is a member of Plumbers Local Union No. 1, U.A. and has been employed by Defendants as a Plumber since in or about September of 2015.

74.     Throughout his employment, Mr. DeRosa has been assigned a work vehicle maintained by Defendants in the NYPD 105th Precinct located at 92-08 222nd St, Queens, N.Y. 11428.

75.     Mr. De Rosa is scheduled to work thirty-five (35) hours per week, seven (7) hours per day with a thirty (30) minute unpaid meal break, Monday to Friday, from 7:00 a.m. to 2:30 p.m.

14

76.     However, Defendants required Mr. DeRosa to work hours beyond his scheduled shift virtually each week, and therefore consistently works and has worked in excess of forty (40) hours.  Specifically, Mr. DeRosa regularly worked eight-and-a-half (8.5) to nine (9) hours per day, five (5) days per week, working an average of between forty-two-and-a-half (42.5) and forty-five (45) hours per week.

77.     Despite working overtime virtually each week, Defendants failed to compensate Mr. DeRosa for all of his work time, including, but not limited to, time spent performing tasks enumerated in Paragraphs 32-37 before the start of his scheduled shift, after the end of his scheduled shift, and during his unpaid thirty (30) minute meal period.  On average, Mr. DeRosa was not compensated for between two (2) and five (5) hours of overtime each week.

78.     By way of example only, during the week July 25, 2021 through July 31, 2021, Mr. DeRosa worked forty-two hours and thirty-seven minutes (42.62) according to the following schedule, yet Defendants only paid him for thirty-five (35) hours of work this week:

Sunday, July 25, 2021:          off.

Monday, July 26, 2021:         from 6:13 a.m. until approximately 3:15 p.m.

Tuesday, July 27, 2021:         from 6:05 a.m. until 2:41 p.m.
                                (Denied meal break).

Wednesday, July 28, 2021:      from 5:49 a.m. until 2:27 p.m.
                                (Denied meal break).

Thursday, July 29, 2021:        from 6:12 a.m. until approximately 3:15 p.m.

Friday, July 30, 2021:          from 6:12 a.m. until approximately 3:00 p.m.

Saturday, July 31, 2021:        off.

79.     Defendants failed to compensate Mr. DeRosa for all his time spent retrieving his work vehicle from NYPD storage facilities and driving to worksites before the start of his scheduled shifts.  For the week above, Mr. DeRosa was paid nothing for the work he performed before 7:00 a.m.

80.     Defendants captured the pre-shift hours Mr. DeRosa worked in their electronic timekeeping system.   Specifically, the CityTime timesheet for the week above shows that Mr. DeRosa worked an additional four hours and forty-five minutes (4.75).  Indeed, this timekeeping mechanism is entirely self-serving as Defendants' payroll records continuously underreported the number of hours actively worked by Mr. DeRosa.

81.     Defendants also failed to compensate Mr. DeRosa for all his time spent driving his assigned work vehicle from NYPD worksites to storage facilities and returning the vehicle after the end of his scheduled shifts.  For the week above, Mr. DeRosa worked past 2:30 p.m. on four days resulting in approximately in one-and-a-half (1.5) hours of unpaid overtime.

82.     In addition, as described above, twice this week, Defendants required Mr. DeRosa to work through his meal period to complete assignments.  For the week above, Mr. DeRosa was denied uninterrupted meal breaks on two days resulting in an additional one (1) hour of unpaid overtime.

83.     Accordingly, Defendants failed to pay Plaintiff Mr. DeRosa any compensation, let alone one-and-one-half times his regular rate of pay, for two hours and thirty-seven minutes (2.62) of overtime this week.

**Sean O'Brien**

84.     Plaintiff Mr. O'Brien is a member of Local Union No. 3, IBEW and has been employed by Defendants as an Electrician since in or about August of 2014.

85.     Throughout his employment, Mr. O'Brien has been assigned a work vehicle maintained by Defendants in the NYPD 105th Precinct located at 92-08 222nd St, Queens, N.Y. 11428.

86.     Mr. O'Brien is scheduled to work thirty-five (35) hours per week, seven (7) hours per day with a thirty (30) minute unpaid meal break, Monday to Friday, from 7:00 a.m. to 2:30 p.m.

87.     However, Defendants required Mr. O'Brien to work hours beyond his scheduled shift virtually each week, and therefore consistently works and has worked in excess of forty (40) hours.  Specifically, Mr. O'Brien regularly worked eight-and-a-half (8.5) to nine (9) hours per day, five (5) days per week, working an average of between forty-two-and-a-half (42.5) and forty-five (45) hours per week.

88.     Despite working overtime virtually each week, Defendants failed to compensate Mr. O'Brien for all of his work time, including, but not limited to, time spent performing tasks enumerated in Paragraphs 32-37 before the start of his scheduled shift, after the end of his scheduled shift, and during his unpaid thirty (30) minute meal period.  On average, Mr. O'Brien was not compensated for between two (2) and five-and-a-half (5.5) hours of overtime each week.

89.     For example, during the week of May 22, 2022 to May 28, 2022, Mr. O'Brien worked forty-two hours and 22 minutes (42.37) according to the following schedule, yet Defendants only paid him for thirty-five (35) hours of work this week:

Sunday, May 22, 2022:          off.

Monday, May 23, 2022:          from 5:57 a.m. until 2:29 p.m.
                               (Denied meal break).

Tuesday, May 24, 2022:         from 5:56 a.m. until approximately 3:00 p.m.

Wednesday, May 25, 2022:   from 6:03 a.m. until 2:27 p.m.

(Denied meal break).

Thursday, May 26, 2022:       from 5:46 a.m. until 2:30 p.m.

Friday, May 27, 2022:         from 5:52 a.m. until approximately 3:00 p.m.

Saturday, May 28, 2022:       off.

90.     Defendants failed to compensate Mr. O'Brien for all his time spent retrieving his work vehicle from NYPD storage facilities and driving to worksites before the start of his scheduled shifts.  For the week above, Mr. O'Brien was paid nothing for the work he performed before 7:00 a.m.

91.     Defendants captured the pre-shift hours Mr. O'Brien worked in their electronic timekeeping system.  Specifically, the CityTime timesheet for the week above shows that Mr. O'Brien worked five-and-a-half (5.5) pre-shift hours resulting in thirty (30) minutes of unpaid overtime.  Indeed, this timekeeping mechanism is entirely self-serving as Defendants' payroll records continuously underreported the number of hours actively worked by Mr. O'Brien.

92.     Defendants also failed to compensate Mr. O'Brien for all his time spent driving his assigned work vehicle from NYPD worksites to storage facilities and returning the vehicle after the end of his scheduled shifts.  For the week above, Mr. O'Brien worked past 2:30 p.m. on two days resulting in approximately one (1) additional hour of unpaid overtime.

93.     In addition, as described above, twice this week, Defendants required Mr. O'Brien to work through his meal period to complete assignments.  For the week above, Mr. O'Brien was denied uninterrupted meal breaks on two days resulting in an additional one (1) hour of unpaid overtime.

94.     Accordingly, Defendants failed to pay Plaintiff Mr. O'Brien any compensation, let alone one-and-one-half times his regular rate of pay, for two hours and twenty-two minutes (2.37) of overtime this week.

**Adolfo Redillo**

95.     Plaintiff Mr. Redillo ("Mr. Redillo") is a member of City Employees Union Local 237, IBT and has been employed by Defendants as a Maintenance Worker since in or about November of 2013.

96.     From the start of his employment until in or around September of 2022, Mr. Redillo was assigned a work vehicle maintained by Defendants in the following NYPD storage facilities: (i) NYPD Highway Patrol Unit 3 located at 198-15 Grand Central Pkwy, Hollis, N.Y. 11423; and (ii) NYPD Building Maintenance Section Facility located at 59-06 Laurel Hill Blvd., Woodside N.Y. 11377.

97.     Mr. Redillo is scheduled to work forty (40) hours per week, eight (8) hours per day with a thirty (30) minute unpaid meal break, Monday to Friday, from 7:00 a.m. to 3:30 p.m.

98.     However, Defendants required Mr. Redillo to work beyond his scheduled shift virtually every week, and therefore consistently works and has worked in excess of forty (40) hours.  From the start of his employment until in or around September of 2022, Mr. Redillo regularly worked nine-and-a-half (9.5) to fifteen (15) hours per day, five (5) days per week, working an average of between forty-seven-and-a-half (47.5) and seventy-five (75) hours per week.

99.     Despite working overtime each week, Defendants failed to compensate Mr. Redillo for all of his work time, including, but not limited to, time spent performing tasks enumerated in Paragraphs 32-37 before the start of his scheduled shift, after the end of his scheduled shift, and

19

during his unpaid thirty (30) minute meal period.  On average, Mr. Redillo was not compensated for between seven (7) and ten-and-a-half (10.5) hours of overtime.

100.    For example, during the week February 2, 2020 through February 8, 2020, Mr. Redillo worked seventy-two hours and forty minutes (72.68) according to the following schedule, yet Defendants only paid him for sixty-five (65) hours of work this week:

| | |
|---|---|
| Sunday, February 2, 2020: | off. |
| Monday, February 3, 2020: | from 5:08 a.m. until 8:00 p.m. |
| Tuesday, February 4, 2020: | from 4:55 a.m. until 8:00 p.m. (Denied meal break). |
| Wednesday, February 5, 2020: | from 5:15 a.m. until 8:00 p.m. |
| Thursday, February 6, 2020: | from 5:13 a.m. until 8:00 p.m. |
| Friday, February 7, 2020: | from 5:18 a.m. until 8:00 p.m. (Denied meal break). |
| Saturday, February 8, 2020: | off. |

101.    Defendants failed to compensate Mr. Redillo for all his time spent retrieving his work vehicle from NYPD storage facilities and driving to worksites before the start of his scheduled shifts.  For the week above, Mr. Redillo was paid nothing for the work he performed before 7:00 a.m.

102.    Defendants captured the pre-shift hours Mr. Redillo worked in their electronic timekeeping system.  Specifically, the CityTime timesheet for the week above shows that Mr. Redillo worked and was not compensated for six-and-half (6.5) pre-shift hours.  Indeed, this timekeeping mechanism is entirely self-serving as Defendants' payroll records continuously underreported the number of hours actively worked by Mr. Redillo.

103.   In addition, as described above, twice this week, Defendants required Mr. Redillo to work through his meal period to complete assignments.  For the week above, Mr. Redillo was denied uninterrupted meal breaks on two days resulting in an additional one (1) hour of unpaid overtime.

104.   Accordingly, Defendants failed to pay Plaintiff Mr. Redillo any compensation, let alone one-and-one-half times his regular rate of pay, for seven hours and forty minutes (7.68) of overtime this week.

**Aloko Khan**

105.   Plaintiff Mr. Khan is a member of DC 37, AFSCME, AFL-CIO and has been employed by Defendants as a Laborer since in or about November of 2018.

106.   Throughout his employment, Mr. Khan has been assigned a work vehicle maintained by Defendants in the following NYPD storage facilities: (i) NYPD 100th Precinct located at 92-24 Rockaway Beach Blvd., Queens, N.Y. 11693; and (ii) NYPD Building Maintenance Section Facility located at 59-06 Laurel Hill Blvd., Woodside N.Y. 11377.

107.   Mr. Khan is scheduled to work forty (40) hours per week, eight (8) hours per day with a thirty (30) minute unpaid meal break, Monday to Friday, from 7:00 a.m. to 3:30 p.m.

108.   However, Defendants required Mr. Khan to work beyond his scheduled shift virtually each week, resulting in him routinely working in excess of forty (40) hours per week. Specifically, Mr. Khan is required to work between nine (9) and ten (10) hours per day, five (5) days per week, working an average of forty-five (45) to fifty (50) hours per week.

109.   Despite working overtime each week, Defendants failed to compensate Mr. Khan for all of his work time, including, but not limited to, time spent performing tasks enumerated in Paragraphs 32-37 before the start of his scheduled shift, after the end of his scheduled shift, and

during his unpaid thirty (30) minute meal period. On average, Mr. Khan was not compensated for between five (5) and ten (10) hours of overtime each week.

110.    By way of example only, during the week of November 6, 2022 through November 12, 2022, Mr. Khan worked forty-six-and-a-half (46.5) hours according to the following schedule, yet Defendants only paid him for forty (40) hours of work this week:

Sunday, November 6, 2022:        off.

Monday, November 7, 2022:        from approximately 6:00 a.m. until 3:30 p.m.

Tuesday, November 8, 2022:        from approximately 6:00 a.m. until 4:00 p.m.
                                                        (Denied meal break).

Wednesday, November 9, 2022: from approximately 6:00 a.m. until 4:00 p.m.

Thursday, November 10, 2021:  from approximately 6:00 a.m. until 3:30 p.m.

Friday, November 11, 2021:        from approximately 6:00 a.m. until 3:30 p.m.

Saturday, November 12, 2021:  off.

111.    Defendants failed to compensate Mr. Khan for all his time spent retrieving his work vehicle from NYPD storage facilities and driving to worksites before the start of his scheduled shifts.  For the week above, Mr. Khan was paid nothing for the work he performed before 7:00 a.m. resulting in five (5) hours of unpaid overtime.

112.    Defendants also failed to compensate Mr. Khan for all his time spent driving his assigned work vehicle from NYPD worksites to storage facilities and returning the vehicle after the end of his scheduled shifts.  For the week above, Mr. Khan worked past 3:30 p.m. on two days resulting in an additional one (1) hour of unpaid overtime.

113.     In addition, as described above, once this week, Defendants required Mr. Khan to work through his meal period to complete assignments.  For the week above, Mr. Khan was denied an uninterrupted meal break on one day resulting in an additional thirty (30) minutes of unpaid overtime.

114.     Accordingly, Defendants failed to pay Plaintiff Mr. Khan any compensation, let alone one-and-one-half times his regular rate of pay, for six-and-a-half (6.5) hours of overtime this week.

### FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS
*Failure to Pay Overtime Wages in Violation of the FLSA*

115.     Plaintiffs and FLSA Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

116.     29 U.S.C. § 207(a) requires employers to compensate their employees at a rate not less than one and one-half times their regular rate of pay for all hours worked exceeding forty in a workweek.

117.     As described above, Defendants are "employers" within the meaning of the FLSA, while Plaintiffs are "employees" within the meaning of the FLSA.

118.     Plaintiffs and FLSA Plaintiffs worked in excess of forty hours per week, yet Defendants failed to compensate them in accordance with the FLSA's overtime provisions.

119.     Defendants willfully violated the FLSA.

120.     Plaintiffs and FLSA Plaintiffs are entitled to overtime pay for all hours worked per week in excess of forty (40) at the rate of one and one-half times their respective regular rates of pay.

121.     Plaintiffs and FLSA Plaintiffs are also entitled to liquidated damages, interest, attorneys' fees, and costs for Defendants' violations of the FLSA's overtime provisions.

## DEMAND FOR A JURY TRIAL

122. Pursuant to FRCP 38(b), Plaintiffs and FLSA Plaintiffs demand a trial by jury in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs and FLSA Plaintiffs demand judgment against Defendants as follows:

A. Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with the Defendants, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

B. An award declaring that the practices complained of herein are unlawful and willful, and in violation of the FLSA:

C. Designation of this action as an FLSA collective action on behalf of Plaintiffs and FLSA Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the FLSA Plaintiffs, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

D. Designation of Plaintiffs and their counsel as collective action representatives under the FLSA;

E. Granting an award in favor of Plaintiffs against Defendants, and awarding the amount of unpaid wages for all overtime hours that Plaintiffs worked but were not paid each week;

F. Awarding liquidated damages to Plaintiffs in an amount equal to 100% of the amount of unpaid wages found owing to Plaintiffs under the FLSA;

G.     An award to the Plaintiffs for costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, and expert witness fees;

H.     Awarding Plaintiffs with service awards for their willingness to come forward as the lead Plaintiffs on behalf of the FLSA Plaintiffs;

I.     An award to the Plaintiffs of pre-judgment and post-judgement interest at the highest-level rate, from the date of service of the initial complaint in this action, on all unpaid wages from the date such wages were earned and due; and

J.     Any such other and further relief as this tribunal deems appropriate.

Date:   New York, New York
           January 20, 2023

                                            Respectfully submitted,

                                            **JOSEPH & NORINSBERG, LLC**

By:     _____
                                            Jon L. Norinsberg, Esq.
                                            Michael R. Minkoff, Esq.
                                            Diego O. Barros, Esq.
                                            110 East 59th Street, Suite 3200
                                            New York, New York 10022
                                            Tel.: (212) 227-5700
                                            Fax: (212) 656-1889
                                            E-mails: jon@norinsberglaw.com;
                                            michael@employeejustice.com; and
                                            diego@norinsberglaw.com
                                            *Attorneys for Plaintiffs and the Putative*
                                            *Collective*

To:  Hon. Sylvia O. Hinds-Radix
       Corporation Counsel of  New York
       100 Church Street
       New York, New York 10007
       *Attorneys For Defendants*